IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Marie Assa'ad-Faltas, | ) | C/A No.: 1:22-3191-TLW-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Washava Moye, Specific | ) | ORDER AND NOTICE |
| Employees of ASGDC, and | ) | |
| Richland County, SC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Marie Assa'ad-Faltas ("Plaintiff"), proceeding pro se and in forma pauperis, filed this complaint pursuant to 42 U.S.C. § 1983 against Washava Moye ("Defendant"), interim director of Alvin S. Glenn Detention Center ("ASGDC"), Specific Employees of ASGDC,[1] and Richland County, South Carolina ("Richland County"). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Civ. Rule 73.02(B)(2)(d) (D.S.C.), the undersigned is authorized to review such complaints for relief and submit findings and recommendations to the district judge.

I.     Factual and Procedural Background

---

[1] Plaintiff has failed to provide information sufficient to identify Specific Employees of ASGDC. The United States Marshal cannot serve an improperly identified defendant, and unserved defendants may be dismissed as parties to a case.

Plaintiff alleges she reported to ASGDC on June 27, 2022, to serve ten days of a suspended six-month sentence. [ECF No. 1 at 1]. She claims she was ordered to stand, instead of sit in a wheelchair, while she was booked into ASGDC. *Id.* She asserts her blood pressure was elevated at 154/104 mmHg during the intake assessment. *Id.* She states "[a] woman" pushed her into a holding cell, where she was locked in for hours and experienced severe pain due to sitting on the hard surface. *Id.* She indicates ASGDC staff ignored her pecking on the cell door's plexiglass window and her pointing to her emergency bracelet and disregarded her claim that her intake examination was incomplete, claiming someone else would have to complete the next stage of the evaluation. *Id.* at 2–3. She states she was subsequently moved to a cell in P-dorm without completion of the intake exam and had to wait for the nurse to distribute nighttime medications before obtaining additional assistance. *Id.* at 3. She claims she was subsequently taken to the medical unit, where she was initially mocked before an electrocardiogram ("EKG") showed atrial fibrillation. *Id.* She states she subsequently received a nitroglycerin pill that lowered her blood pressure and decreased her chest pain, but caused her headaches. *Id.*

Plaintiff indicates she developed a fever and chills and continued to have headaches and chest pain the following morning, but that she was not taken to see a physician. *Id.* She notes she attempted to complete a medical request

form, but initially had no pen, was ordered back to her cell before she could complete the form, and was ignored as she held the form to the window of her cell for someone to take it from her. *Id.* She states she was referred to Prisma Health the following evening after Nurse Holsey checked her blood pressure and decided to send her out for atrial fibrillation. *Id.* She says Officer McKinley or Kinney initially forced her to walk toward the area for transport, but Officer Porter saw them in the hall and questioned why she was being forced to walk. *Id.* She notes Officer McKinley or Kinney subsequently returned to her cell to retrieve the wheelchair and used it to transport her the remainder of the way. *Id.* She claims she was transported to the hospital with a male inmate in a two-compartment van without seatbelts and claims she could have been transported in a patrol car. *Id.*

Plaintiff complains that Officer McKinley or Kinney refused her request to turn off the lights in her hospital room and instructed hospital staff not to comply with her requests for a warm blanket and to notify her next-of-kin that she was hospitalized, allegedly erroneously claiming it was "against the law" for her family to be notified of her whereabouts. *Id.* at 3–4. She asserts this irritated her and caused her blood pressure and heart rate to increase. *Id.* at 3. She claims all but a few of the officers from ASGDC who were assigned to her hospital room "had the TV turned on all the time, sometimes very loud" and were "sadistically abusive." *Id.* at 4. She specifically alleges Officer Trapp

3

inserted herself into her conversations with healthcare providers, insulted her to the nursing staff, and erroneously claimed she was incarcerated "because she would not stop calling 911." *Id.* She states officers initially refused to unshackle her wrists when she went to the bathroom, causing her to be unable to wash her face, brush her teeth, and comb her hair without hitting herself in the face with a dangling wrist cuff. *Id.* Plaintiff indicates another officer assigned to her hospital room, Officer Pinckney, told her to shut up and stated she could "cuss [her] anytime [she] wanted." *Id.* at 5.

Plaintiff states she was discharged from Prisma Health with a new prescription for Eliquis 5 mg twice daily. *Id.* She indicates she received only three of the six doses she should have been administered between her release from Prisma Health and her release from ASGDC, as no nurse was available to administer the medications on the evenings of July 1 and July 3. *Id.* She says she experienced bradycardia on July 3 and Nurse Halsey indicated she would return with an EKG machine, but failed to do so. *Id.* She states her blood pressure was not monitored as directed. *Id.* She claims she acquired atrial fibrillation as a result of the deliberate indifference to her medical needs and interference with her recovery and that it has not relented. *Id.*

Plaintiff claims the P-dorm was not staffed during most of the days and nights of her incarceration and that, as a result thereof, she was not permitted to go into the open-air area, depriving her of fresh air and exposure to the sun.

4

*Id.* She states she witnessed an ASGDC officer exchange profanity with and end up in a physical altercation with an inmate, during which the officer pushed the inmate into her cell door, causing her food tray to spill. *Id.* She complains she was forced to be housed with another inmate whom she feared because a flooded cell was not repaired and her request to be transferred to a single cell was not honored. *Id.*

Plaintiff requests an award for damages as to Richland County and individually as to Director Moye and Specific Employees of ASGDC who allegedly negligently or intentionally injured her. *Id.* at 1. She further seeks injunctive and declaratory relief as to Director Moye. *Id.*

The instant case was severed from another case by order of the court. *Assa'ad-Faltas v. Moye*, C/A No. 3:22-2018-TLW-SVH, ECF No. 21 (D.S.C.).

II.  Discussion

   A.  Standard of Review

Plaintiff filed her complaint pursuant to 28 U.S.C. § 1915, which permits an indigent litigant to commence an action in federal court without prepaying the administrative costs of proceeding with the lawsuit. To protect against possible abuses of this privilege, the statute allows a district court to dismiss a case upon a finding that the action fails to state a claim on which relief may be granted or is frivolous or malicious. 28 U.S.C. § 1915(e)(2)(B)(i), (ii). A finding of frivolity can be made where the complaint lacks an arguable basis

5

either in law or in fact. *Denton v. Hernandez*, 504 U.S. 25, 31 (1992). A claim based on a meritless legal theory may be dismissed sua sponte under 28 U.S.C. § 1915(e)(2)(B). *See Neitzke v. Williams*, 490 U.S. 319, 327 (1989).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Pro se complaints are held to a less stringent standard than those drafted by attorneys. *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). In evaluating a pro se complaint, the plaintiff's allegations are assumed to be true. *Fine v. City of N.Y.*, 529 F.2d 70, 74 (2d Cir. 1975). The mandated liberal construction afforded to pro se pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so. A federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts that set forth a claim currently cognizable in a federal district court. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 390–91 (4th Cir. 1990). Although the court must liberally construe a pro se complaint, the United States Supreme Court has made it clear a plaintiff must do more than make conclusory statements to state a claim. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009); *Bell Atlantic Corp.*

6

*v. Twombly*, 550 U.S. 544, 555 (2007). Rather, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face, and the reviewing court need only accept as true the complaint's factual allegations, not its legal conclusions. *Iqbal*, 556 U.S. at 678–79.

B.   Analysis

1.   Insufficient Allegations for Injunctive Relief

Plaintiff sues Director Moye "for injunctive relief and declaratory relief" and also requests a temporary restraining order ("TRO"). A party seeking a preliminary injunction or TRO must establish the following four elements: (1) she is likely to succeed on the merits; (2) she is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in her favor; and (4) an injunction is in the public interest. *Winter v. Natural Resources Defense Counsel, Inc.*, 555 U.S. 7, 20 (2008); *The Real Truth About Obama, Inc. v. Federal Election Comm'n*, 575 F.3d 342, 346–47 (4th Cir. 2009), overruling *Blackwelder Furniture Co. of Statesville v. Seilig Mfg. Co.*, 550 F.2d 189 (4th Cir. 1977).[2] The party must make clear showings as to the first and

---

[2] Although the original decision in *Real Truth* was vacated by the Supreme Court for further consideration in light of the decision in *Citizens United v. Federal Election Comm'n*, 558 U.S. 310 (2010), the Fourth Circuit reissued its opinion on Parts I and II of its earlier opinion in the case. 575 F.3d at 345–47, stating the facts and articulating the standard for the issuance of preliminary injunctions, before remanding it to the district court for consideration in light of *Citizens United*. *See Real Truth*, 607 F.3d 355 (4th Cir. 2010).

second elements. *Winter*, 555 U.S. at 19–22; *Real Truth*, 575 F.3d at 345–47. The court may only consider whether the balance of equities tips in favor of the party seeking injunctive relief after she has satisfied the first two elements. *See Real Truth*, 575 F.3d at 346–47. Finally, the court must be particularly mindful of the public consequences of employing the extraordinary relief of injunction. *Real Truth*, 575 F.3d at 347 (quoting *Winter*, 555 U.S. at 19–23).

Plaintiff's allegations fail to establish any of the four elements required for injunctive relief. Therefore, her requests for declaratory and injunctive relief and a TRO are subject to summary dismissal.

###         2.     § 1983 Claims

Plaintiff brings this action pursuant to 42 U.S.C. § 1983. To state a plausible claim for relief under § 1983, an aggrieved party must sufficiently allege she was injured by "the deprivation of any [of her] rights, privileges, or immunities secured by the [United States] Constitution and laws" by a "person" acting "under color of state law." *See* 42 U.S.C. § 1983; *see generally* 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1230 (3d ed. 2014). To state a claim on which relief may be granted, Plaintiff "must have plausibly alleged in his complaint that his constitutional rights were violated." *Tobey v. Jones*, 706 F.3d 379 (4th Cir. 2013).

To assert a viable § 1983 claim against a public official, a causal connection or affirmative link must exist between the public official and his

conduct. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (providing that a plaintiff in a § 1983 action must plead that the defendant, through his own individual actions, violated the Constitution); *Rizzo v. Goode*, 423 U.S. 362, 371–72 (1976) (holding a § 1983 plaintiff must show that he suffered a specific injury as a result of specific conduct of a defendant, and an affirmative link between the injury and that conduct); *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985) ("In order for an individual to be liable under § 1983, it must be 'affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights. The doctrine of respondeat superior has no application under this section.'") (quoting *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977)).

### a. Richland County and Director Moye

Plaintiff appears to allege Richland County was responsible for custody of the county jail and the appointment of Director Moye, who she alleges failed to adequately train "ASGDC [staff] in decent treatment of inmates," understaffed dorms and "neglected repair of cells in the female P-dorm." [ECF No. 1 at 1, 5]. The Supreme Court has held that "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 694 (1978). "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to

represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* Plaintiff has pointed to no official policy of Richland County that led to an alleged violation of her rights under the Constitution or federal law.

Plaintiff has failed to plausibly allege that she sustained any injury as a result of Director Moye's alleged failure to repair the flooded jail cell or due to any other prison conditions. To demonstrate a constitutional violation with respect to prison conditions, a plaintiff must show "(1) a serious deprivation of a basic human need" and "(2) deliberate indifference to prison conditions on the part of prison officials." *Williams v. Griffin*, 952 F.2d 820, 824 (4th Cir. 1991) (citing *Rhodes v. Chapman*, 452 U.S. 337, 347; *Wilson v. Seiter*, 501 U.S. 294 (1991). "The Eighth Amendment does not prohibit cruel and unusual prison conditions; it prohibits cruel and unusual punishments. If a prisoner has not suffered serious or significant physical or mental injury as a result of the challenged condition, he simply has not been subjected to cruel and unusual punishment within the meaning of the Amendment." *Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir. 1993).

Plaintiff makes the conclusory accusation that Director Moye failed to adequately train "ASGDC [staff] in decent treatment of inmates" based on her supervisory position. She cites no evidence to support a finding that Director Moye personally participated in the actions she regards as deliberately

10

indifferent to her serious medical needs or took any specific action to promote any such actions.

In light of the foregoing, Plaintiff's claims against Richland County and Director Moye are subject to summary dismissal.

                    b.      Specific Employees of ASGDC

Plaintiff generally alleges Specific Employees of ASGDC "negligently and/or intentionally injured [her]." [ECF No. 1 at 1]. She appears to be asserting a claim for deliberate indifference to her serious medical needs.

In *Estelle v. Gamble*, 429 U.S. 97, 104 (1976), the Supreme Court stated:

> We therefore conclude that deliberate indifference to serious medical needs of a prisoner constitutes the "unnecessary and wanton infliction of pain," *Gregg v. Georgia, supra*, at 173, (joint opinion), proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

"[T]he Eighth Amendment imposes a duty on prison officials to 'provide humane conditions of confinement . . . [and] ensure that inmates receive adequate food, clothing, shelter, and medical care.'" *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016) (quoting *Farmer v. Brennen*, 511 U.S. 825, 832, 114 S. Ct. 1970, 128 L.Ed.2d 811 (1994)). To bring a cause of action under § 1983 based on prison conditions prohibited under the Eighth Amendment, a

11

plaintiff "must satisfy the Supreme Court's two-pronged test set forth in *Farmer v. Brennan*, 511 U.S. 825, 114 S. Ct. 1970, 128 L.Ed.2d 811 (1994)." *Id*. The court explained:

> First, *Farmer's* "objective prong" requires plaintiffs to demonstrate that the "deprivation alleged [was], objectively, 'sufficiently serious,' the deprivation must be "extreme"—meaning that it poses "a serious or significant physical or emotional injury resulting from the challenged conditions," or "a substantial risk of such serious harm resulting from . . . exposure to the challenged conditions." *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003) (internal quotation marks and citations omitted). In medical needs cases, like the case at bar, the *Farmer* test requires plaintiffs to demonstrate officials' deliberate indifference to a "serious" medical need that has either "been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreve*, 535 F.3d 224, 241 (4th Cir. 2008).
>
> Second, under *Farmer's* "subjective" prong, plaintiffs must show that prison officials acted with "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834, 114 S. Ct. 1970 (internal quotation marks omitted).

*Id.*

Plaintiff has provided insufficient information for "Specific Employees of ASGDC" to be identified as individual persons and served with process. She refers to multiple employees of ASGDC, including "Officer Goldwire," "Officer Ellis," "Nurse Holsey," "Officer Mckinley?/Kinney?," "Officer Porter," "Sergeant Sharon Thompson (?)," "Sergeant Sutton," "Officer J. Owens," "Officer Trapp," "Officer McClennan," "officer Pinckney," "Officer Dier?," and "Nurse Halsey," and discusses the actions of each in the complaint. However, she does not

12

specify which, if any, of these ASGDC employees are among the Specific Employees of ASGDC indicated as defendants. She indicates most of these employees engaged in activities that she found bothersome, but the actions she references are not sufficiently serious to support an Eighth Amendment cause of action under *Farmer's* objective prong. Therefore, Plaintiff's allegations as to Specific Employees of ASGDC are subject to summary dismissal.

### 3. Recusal

Plaintiff includes in her complaint a "Motion for Recusal of Jurists Wooten and Hodges." [ECF No. 1 at 1]. She presents no argument in support of her request. *See generally* ECF No. 1. "[T]here is as much obligation upon a judge not to recuse himself where there is no occasion as there is for him to do so when there is." *Nakell v. Attorney Gen. of N.C.*, 15 F.3d 319, 325 (4th Cir. 1994) (citations and quotations omitted); *see also* Code of Conduct, Canon 3A(2) ("A judge should hear and decide matters assigned, unless disqualified . . . ."). In the absence of evidence requiring recusal of the undersigned or Judge Wooten pursuant to 28 U.S.C. § 455, the undersigned is constrained to deny Plaintiff's request for recusal.

### NOTICE CONCERNING AMENDMENT

Plaintiff may attempt to correct the defects in her complaint by filing an amended complaint by **October 13, 2022**, along with any appropriate service documents. Plaintiff is reminded an amended complaint replaces the original

13

complaint and should be complete in itself. *See Young v. City of Mount Ranier*, 238 F.3d 567, 572 (4th Cir. 2001) ("As a general rule, an amended pleading ordinarily supersedes the original and renders it of no legal effect.") (citation and internal quotation marks omitted). If Plaintiff files an amended complaint, the undersigned will conduct screening of the amended complaint pursuant to 28 U.S.C. § 1915A. If Plaintiff fails to file an amended complaint or fails to cure the deficiencies identified above, the undersigned will recommend to the district court that the claims be dismissed without leave for further amendment.

IT IS SO ORDERED.

September 22, 2022            Shiva V. Hodges
Columbia, South Carolina      United States Magistrate Judge