IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Marie Assa'ad-Faltas, M.D, M.P.H., | ) ) ) | C/A No.: 3:22-3191-TLW-SVH |
| Plaintiff, | ) ) ) ) | |
| vs. | ) ) | |
| Washava Moye, Specific Employees of Alvin S. Glenn Detention Center, Richland County, SC, Henry Dargan McMaster, Brian Stirling, Donald John Zelenka, Sara Heather Savitz Weiss, Timothy Lee Griffith, Danielle Dixon, John Williamson Kittredge, Jack McKenzie, John Grantland, Mark Tinsley, William Tetterton, ASGDC Officer FNU Goldwire, ASGDC Officer FNU McKinley/Kinney, ASGDC Officer FNU Trapp, ASGDC Officer FNU McClennan, ASGDC FNU Officer Pinckney, ASGDC Office FNU Dier, Leon Lott, Overture Walker, W.H. Skip Holbrook, Byron Gipson, Larry Wayne Mason, Dinah Gail Steele, and all other unknown-named persons who injured and/or conspired to injury Plaintiff and and/or who acted to deny accommodations to the disabled, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | REPORT AND RECOMMENDATION |
| Defendants. | ) ) ) | |

Marie Assa'ad-Faltas, M.D., M.P.H. ("Plaintiff"), proceeding pro se and

in forma pauperis, filed this amended complaint pursuant to 42 U.S.C. § 1983

against former interim director of Alvin S. Glenn Detention Center ("ASGDC") Washava Moye ("Director Moye"), specific employees of ASGDC who Plaintiff alleges negligently and/or intentionally injured her ("ASGDC Employees"), Richland County, South Carolina ("Richland County"), Governor Henry Dargan McMaster ("Governor McMaster"), South Carolina Department of Corrections Director Brian Stirling ("Director Stirling"), Deputy Attorney General Donald John Zelenka ("AG Zelenka"), Assistant Attorney General Sara Heather Savitz Weiss ("AG Weiss"), Timothy Lee Griffith ("Mr. Griffith"), Danielle Dixon ("Ms. Dixon"), South Carolina Supreme Court Justice John Williamson Kittredge ("Justice Kittredge"), Jack McKenzie ("Mr. McKenzie"), John Grantland ("Mr. Grantland"), Mark Tinsley ("Mr. Tinsley"), William Tetterton ("Mr. Tetterton"), ASGDC Officer first name unknown ("FNU") Goldwire ("Officer Goldwire"), ASGDC Officer FNU McKinley or Kinney ("Officer McKinley/Kinney"), ASGDC Officer FNU Trapp ("Officer Trapp"), ASGDC Officer FNU McClennan ("Officer McClennan"), ASGDC Officer FNU Pinckney ("Officer Pinckney"), ASGDC Officer FNU Dier ("Officer Dier"); Richland County Sheriff Leon Lott ("Sheriff Lott"), Richland County Council Chairman Overture Walker ("Chairman Walker"), Columbia Police Chief W.H. "Skip" Holbrook ("Chief Holbrook"), Fifth Judicial Circuit Solicitor Byron Gipson ("Solicitor Gipson"), Larry Wayne Mason ("Mr. Mason"), Dinah Gail Steele ("Ms. Steele"), and all other unknown-named persons who Plaintiff

alleges injured and/or conspired to injure her ("All Other Unknown-Named Persons") (collectively "Defendants"). [ECF No. 16]. Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Civ. Rule 73.02(B)(2)(d) (D.S.C.), the undersigned is authorized to review such complaints for relief and submit findings and recommendations to the district judge. For the following reasons, the undersigned recommends the district judge dismiss Plaintiff's amended complaint.

I.    Factual and Procedural Background

Plaintiff alleges she was ordered to report to ASGDC at 10:00 a.m. on June 27, 2022, to serve ten days of a suspended six-month sentence imposed by the South Carolina Supreme Court ("SCSC") for contempt of court. [ECF No. 16 at 2, 3]. She indicates AG Zelenka denied her request to delay reporting, despite being informed that she had been involved in a hit-and-run accident on June 18, needed time to recover, and was at risk of death or permanent disability through incarceration. *Id.* at 3. She claims Mr. Griffith, the attorney appointed by the state court to represent her in pending post-conviction relief ("PCR") actions, transported her to ASGDC at AG Zelenka's request, but did so under the guise that he did not want for her car to be towed even though he had never been to ASGDC and did not know if her car would be towed if she had driven herself. *Id.* at 3, 8. She asserts Mr. Griffith might have offered to drive her because "[p]erhaps there was a secret plan to not issue a bench-

3

warrant for [her] arrest had she not reported" or "conversely, perhaps there was a plan to shoot [her] under pretext that she was a fugitive if she had not reported or was late in reporting and Griffith wanted to be there to be the Judas who delivered Christ for crucifixion." *Id.* at 8.

Plaintiff asserts that upon arriving at ASGDC, she was unable to walk the distance between Mr. Griffith's car and the parking lot. *Id.* at 3. However, she states that after Mr. Griffith left, she was "scolded to keep standing" by ASGDC Employees even though there was a vacant wheelchair nearby. *Id.* She claims Officer Goldwire read her emergency bracelet and "knew, or could have known" she "suffer[ed] *inter alia* from iatrogenic hypoparathyroidism that cause[d] hypocalcemia which, if exacerbated and untreated, could cause fatal laryngeal-stridor-inducing tetany." *Id.* She asserts a woman checked her blood pressure and it was elevated at 154/104 mmHg. *Id.* She states Officer Goldwire subsequently pushed her into a holding cell, where she was locked in for hours and experienced severe pain due to sitting on the hard surface. *Id.* She indicates ASGDC Employees ignored her pecking on the cell door's plexiglass window and pointing to her emergency bracelet. *Id.* She indicates she finally spoke with Officer Goldwire, who told her that she "must suffer" because she was in jail and dismissed her allegation that her intake assessment had not been completed by stating someone else would be completing the next stage of the assessment. *Id.*

4

Plaintiff states she was subsequently moved to a cell in P-dorm without completion of the intake exam and had to wait for the nurse to distribute nighttime medications before obtaining additional assistance. *Id.* at 3–4. She argues AG Zelenka either intentionally arranged for her to be held with violent and unclassified inmates in P-dorm or neglected to communicate with ASGDC staff that she should be held with non-violent offenders in U-dorm, which contained wider beds that were "less hard on the bones." *Id.* at 3. She alleges she felt chest pain and headaches and tried to alert the dorm guard that her intake assessment had not been completed. *Id.* at 4.

Plaintiff states that the nurse distributing the nighttime medications recorded a diastolic blood pressure of 110, prompting her to transfer Plaintiff to the medical unit. *Id.* She said he was initially mocked before an electrocardiogram ("EKG") showed atrial fibrillation. *Id.* She states the on-call physician prescribed a nitroglycerin pill that lowered her blood pressure and decreased her chest pain, but caused her headaches. *Id.*

Plaintiff indicates she developed a fever and chills and continued to have headaches and chest pain on the morning of June 28, but was not taken to see a physician. *Id.* She notes she attempted to complete a medical request form, but initially had no pen, was ordered back to her cell before she could complete the form, and was ignored for hours as she held the form to the window of her cell for someone to take it from her. *Id.* She states her transfer to the hospital

5

was arranged that evening, after Nurse Holsey checked her blood pressure and decided to send her out for atrial fibrillation. *Id.* She says Officer McKinley/Kinney initially forced her to walk toward the area for transport, but Officer Porter saw them in the hall and questioned why she was being forced to walk. *Id.* She notes Officer McKinley/Kinney subsequently returned to her cell to retrieve the wheelchair and used it to transport her the remainder of the way. *Id.* She claims she was transported to the hospital with a male inmate in a two-compartment van without seatbelts, although she could have been transported more comfortably in a patrol car. *Id.*

Plaintiff states that while she was waiting for a bed at Prisma Health Heart Hospital ("Prisma"), Officer McKinley/Kinney refused her request to turn off the lights in the room and to complete his hourly reports by flashlight and instructed hospital staff not to comply with her requests for a warm blanket. *Id.* She asserts this irritated her and caused her blood pressure and heart rate to increase. *Id.* She maintains Officer McKinley/Kinney and other ASGDC Employees intervened to stop hospital staff from notifying her sister that she had been hospitalized by stating it was "against the law" to do so. *Id.* at 5, 6.

Plaintiff claims all but a few of the ASGDC Employees who were assigned to her hospital room "had the TV turned on all the time, sometimes very loud" and were "sadistically abusive." *Id.* at 5. She further maintains the

6

ASGDC Employees ordered food trays, failed to eat their food, and declined to give their food to her to eat, despite her "religious prohibition against wasting food unless it is significantly contaminated." *Id.* She specifically alleges Officer Trapp inserted herself into conversations with healthcare providers, instructed the cleaning staff not to empty the trash or laundry bins in her room, turned the television to a loud cartoon channel, taunted her when she asked her to turn off the television, stated the nursing staff did not care about her, indicated she was compiling reports of Plaintiff's bad behavior, and erroneously claimed Plaintiff was incarcerated "because she would not stop calling 911." *Id.*

Plaintiff states some ASGDC Employees "sadistically" left one handcuff on her wrist and the other dangling when she went to the bathroom, causing her to be unable to wash her face, brush her teeth, and comb her hair without hitting herself in the face with the dangling wrist cuff. *Id.* She claims ASGDC employees denied her request for gauze to be wrapped around her right ankle, under the cuff, to reduce the impact of the cuff on her bone until she complained to her medical providers. *Id.* She indicates Officer Pinckney told her to shut up and stated she could "cuss [her] anytime [she] wanted." *Id.* She states "ASGDC's agents" intentionally upset her to prevent her recovery and worsen her condition. *Id.*

Plaintiff states she was discharged from Prisma with a new prescription for Eliquis 5 mg twice daily. *Id.* She indicates she received only three of the six

doses she should have been administered between her release from Prisma and her release from ASGDC, as no nurse was available to administer the medications on the evenings of July 1 and July 3. *Id.* She claims she experienced vertigo and blurred vision during the night of July 1, but could not report it to a guard because the dorm was not staffed. *Id.* at 7. She says she experienced bradycardia on July 3 and Nurse Halsey indicated she would return with an EKG machine, but failed to do so. *Id.* She states her blood pressure was not monitored as directed. *Id.*

Plaintiff claims the P-dorm was not staffed during most of the days and nights of her incarceration and that, as a result thereof, she was not permitted to go into the open-air area, depriving her of fresh air and exposure to the sun. *Id.* She states she witnessed Officer Dier exchange profanity with an inmate over the dorm's loudspeaker and end up in a physical altercation with an inmate, during which Officer Dier pushed the inmate into her cell door, causing her food tray to spill. *Id.* She complains she was forced to be housed in a single-person cell with another inmate, whom she feared, because a flooded cell was not repaired and her request to be transferred to a single cell was not honored. *Id.*

Plaintiff further alleges Mr. Griffith declined to visit her while she was incarcerated at ASGDC, failed to arrive to pick her at up ASGDC at 4:00 a.m. on July 4, 2022, falsely reported to her sister that she had kept him waiting

outside ASGDC for 45 minutes after he arrived because she would not walk across the parking lot, only allowed her to stop at her post office ("P O") box and an automated teller machine ("ATM") after "much supplication" and only after he missed a turn, and refused to stop at a fast food restaurant to get her water, despite her having informed him that she had had nothing to eat or drink since the prior day and had no refrigerator or functioning air conditioner in her home. *Id.* at 8–9. She generally alleges Mr. Griffith conspired with AG Zelenka, AG Weiss, and Ms. Dixon to "prolong and/or renew" her incarceration, "gaslight" her, increase her physical and mental suffering, and lure one or both of her sisters to South Carolina to be arrested, otherwise harmed, or to deny her of their love and support. *Id.* at 8. She further alleges Mr. Griffith conspired with AG Zelenka, AG Weiss, and Ms. Dixon to lure her to Richland County Court of Common Pleas for PCR hearings in November 2022 for the purpose of having her arrested for coming in contact with court personnel in violation of the SCSC's order. *Id.* at 9.

Plaintiff alleges Mr. McKenzie conspired with Justice Kittredge to collect donations to renovate and fence the parking lot of the SCSC, which would effectively deny the disabled access to a ramp at the rear of the building. *Id.* She claims Justice Kittredge forced SCSC Clerk Pat Howard ("Clerk") to lie and pretend a new ramp, compliant with the Americans with Disabilities Act ("ADA"), was to be erected at the front of the building. *Id.* She asserts it

9

aggravates her knee pain to ascend the stairs in the front of the SCSC building, and she prefers to appear in person to file documents. *Id.*

Plaintiff maintains Mr. Tinsley, Mr. Tetterton, Mr. Grantland, Ms. Steele, and Mr. Mason conspired to vandalize and steal her truck in retaliation for views she expressed on Google and FITSNews regarding the murder trial in *State of South Carolina v. Richard Alexander Murdaugh. Id.* She states Chief Holbrook enabled them. *Id.*

Plaintiff asserts she is 70 years old and in frail health. *Id.* at 8. She alleges Defendants knew or should have known of the risks presented by sleep-deprivation and used it "to sadistically torture" her during her June to July 2022 incarceration and thereafter. *Id.* at 4. She claims that since her discharge from ASGDC, she has continued to suffer heart-accelerating nightmares that wake her in sweats and screams and increase with news reports of stabbings at ASGDC. *Id.* at 5. She indicates she has attempted to obtain psychiatric help, but has been unsuccessful. *Id.* She argues that as a result of Defendants' deliberate indifference to her medical needs and active interference with her recovery, she acquired atrial fibrillation that has not remitted and has been diagnosed by her cardiologist as intractable and requiring a lifelong prescription for Eliquis. *Id.* at 7.

Plaintiff requests actual, compensatory, and punitive damages and injunctive relief. She specifically requests the court order the following: (1)

Director Moye's successor to arrange to have her serve any subsequently-imposed sentences in home detention, an outside medical facility, or an isolated unit without contact with male inmates; (2) Director Moye's successor not to record or monitor her calls should she return to ASGDC; (3) Director Moye's successor to return copies of all previously-recorded calls to her, along with a log of anyone who has ever accessed them; (4) banked credit for time served in cases in which she was "later fully exonerated" and for which she may be exonerated in the future; and (5) she not be returned to ASGDC until all issues in this case and related litigation are resolved with finality.

The instant case was filed on September 19, 2022, and severed by order of the court in *Assa'ad-Faltas v. Moye*, C/A No. 3:22-2018-TLW-SVH, ECF No. 21 (D.S.C.). [ECF No. 1]. On September 22, 2022, the undersigned issued a proper form order and an order and notice advising Plaintiff of deficiencies in her complaint and preventing service of process. [ECF Nos. 7, 8]. Instead of complying with the undersigned's orders, Plaintiff appealed the proper form order and order and notice to the Honorable Terry L. Wooten, Senior United States District Judge ("Judge Wooten") on October 13, 2022. [ECF No. 10]. On July 14, 2023, Judge Wooten issued an order denying Plaintiff's appeal, affirming the proper form order and order and notice, and recommitting the matter to the undersigned for additional pretrial matters. [ECF No. 11]. The undersigned issued an order on July 14, 2023, directing Plaintiff to comply

with the proper form order and order and notice. [ECF No. 14]. Plaintiff filed an amended complaint on July 28, 2023. [ECF No. 16].

II.     Discussion

A.     Standard of Review

Plaintiff filed her amended complaint pursuant to 28 U.S.C. § 1915, which permits an indigent litigant to commence an action in federal court without prepaying the administrative costs of proceeding with the lawsuit. To protect against possible abuses of this privilege, the statute allows a district court to dismiss a case upon a finding that the action fails to state a claim on which relief may be granted or is frivolous or malicious. 28 U.S.C. § 1915(e)(2)(B)(i), (ii). A finding of frivolity can be made where the complaint lacks an arguable basis either in law or in fact. *Denton v. Hernandez*, 504 U.S. 25, 31 (1992). A claim based on a meritless legal theory may be dismissed sua sponte under 28 U.S.C. § 1915(e)(2)(B). *See Neitzke v. Williams*, 490 U.S. 319, 327 (1989).

Pro se complaints are held to a less stringent standard than those drafted by attorneys. *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). A federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In evaluating a pro se complaint, the plaintiff's allegations are assumed to be true. *Fine v. City of N.Y.*, 529 F.2d 70, 74 (2d

Cir. 1975). The mandated liberal construction afforded to pro se pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so. Nevertheless, the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts that set forth a claim currently cognizable in a federal district court. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 390–91 (4th Cir. 1990).

B.    Analysis

As previously noted by this court:

> Plaintiff has a long history of filing frivolous actions within federal and state courts. *See Assa'ad-Faltas v. Weiss*, C/A No. 3:15-3186-TLW-JDA, ECF No. 14 (D.S.C. Aug. 24, 2015) (stating lawsuit was "part of a pattern of vexatious litigation filed by Plaintiff), *report and recommendation accepted by* ECF No. 20 (D.S.C. Sept. 16, 2015); *City of Columbia v. Assa'ad-Faltas*, 800 S.E.2d 782, 783 (S.C. 2017) (providing "[f]or many years, Appellant has engaged in a pattern of frivolous filings and inappropriate conduct towards the courts, court officers, and court employees of this State" and noting "Appellant's unrelenting inappropriate conduct in the South Carolina courts necessitated that certain restrictions be placed upon Appellant's pro se access to the courts to curb her abuse of the judicial process."). Her history of frivolous filings is so egregious that the United States Supreme Court noted she had "repeatedly abused th[e] Court's process" and directed its Clerk "not to accept any further petitions in noncriminal matters" from her unless she paid a filing fee. *Assa'ad Faltas v. Richland County Sheriff's Dept.*, 135 S. Ct. 1418 (2015).

*Ass'ad-Faltas v. McMaster*, C/A No. 3:20-1809-TLW-SVH, 2020 WL 7481739, at \*5 (D.S.C. May 26, 2020), *report and recommendation adopted by* 2020 WL 7425868 (Dec. 18, 2020), aff'd by 858 Fed. App'x 851 (July 22, 2021). This case

is no exception. For the reasons explained below, Plaintiff's amended complaint is subject to summary dismissal, as several of her claims are barred by res judicata and the remainder are frivolous and fail to state a claim on which relief may be granted under 28 U.S.C. § 1915(e)(2)(B)(i) and (ii).

### 1. Claims Barred by Res Judicata

Plaintiff challenged the constitutionality of detention at ASGDC, monitoring of jailhouse calls, and failure to allow her to bank time in a prior case, and the court denied with prejudice her requests for: (1) a temporary restraining order ("TRO") preventing her from being returned to ASGDC should she receive any future jail sentence; (2) injunctions preventing the recording of any future calls she places from ASGDC and requiring the return of her previously-recorded calls; and (3) requests she be permitted to bank time from prior periods of incarceration. *Assa'ad-Faltas v. Moye*, C/A No. 3:22-2018-TLW-SVH, 2022 WL 16748872 (D.S.C. Sept. 21, 2022), *report and recommendation adopted by* 2022 WL 16745100 (Nov. 7, 2022), *aff'd by* 2023 WL 4701003 (4th Cir. July 24, 2023).[1] She also brought claims pursuant to 42 U.S.C. § 1983 against Governor McMaster, AG Zelenka, and AG Weiss that

---

[1] The court takes judicial notice of the record in Plaintiff's prior case. Courts "may properly take judicial notice of matters of public record." *Phillips v. Pitt Cty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). "We note that the most frequent use of judicial notice . . . is in noticing the content of court records." *Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989) (internal quotations and citation omitted).

the court found were unsupported and dismissed with prejudice.[2]

"Under res judicata, a final judgment on the merits bars further claims by parties or their privies based on the same cause of action." *Montana v. United States*, 440 U.S. 147, 153 (1979). "It is well-established in this circuit that the application of res judicata requires a showing of the following three elements: '(1) a final judgment on the merits in an earlier suit; (2) an identity of the cause of action in both the earlier and the later suit, and (3) an identity of parties or their privies in the two suits.'" *Young-Henderson v. Spartanburg Ara Mental Health Center*, 945 F.2d 770, 773 (4th Cir. 1991) (quoting *Nash County Bd. of Educ. v. Biltmore Co.*, 640 F.2d 484, 486 (4th Cir. 1981), *cert. denied*, 454 U.S. 878 (1981)).

The Fourth Circuit has explained:

> Under the doctrine of res judicata, or claim preclusion, "[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." By precluding parties in a subsequent proceeding from raising claims that were or could have been raised in a prior proceeding, "[r]es judicata . . . encourages reliance on judicial decisions, bars vexatious litigation, and frees the courts to resolve other disputes."

---

[2] Plaintiff also alleged Director Moye violated § 1983 during her period of incarceration from June 27 to July 4, 2022. *See Assa'ad-Faltas v. Moye*, C/A No. 3:22-2018-TLW-SVH, 2022 WL 16748872 (D.S.C. Sept. 21, 2022), *report and recommendation adopted by* 2022 WL 16745100 (Nov. 7, 2022), *aff'd by* 2023 WL 4701003 (4th Cir. July 24, 2023). Because the court severed Plaintiff's allegations as to violations during her period of incarceration from C/A No. 3:22-2018-TLW-SVH and ordered the Clerk of Court to refile them in the instant case, it would be inappropriate to dismiss those § 1983 claims against Director Moye based on res judicata.

*Pueschel v. United States*, 369 F.3d 345, 354 (4th Cir. 2004).

The decision in C/A No. 3:22-2018-TLW-SVH operated as a final judgment on the merits and was affirmed on appeal. In this case, the identities of some of the parties are the same, as Plaintiff is again attempting to sue Director Moye, Governor McMaster, AG Zelenka, and AG Weiss. The causes of action are also the same, as Plaintiff bases her requests on similar operative facts and requests the same relief. Therefore, res judicata bars Plaintiff's claims for injunctive and declaratory relief, as well as her claim for damages under § 1983 against Governor McMaster, AG Zelenka, AG Weiss. Accordingly, the undersigned recommends dismissal of Governor McMaster, AG Zelenka, and AG Weiss as parties and denial of Plaintiff's requests for a TRO prohibiting her reincarceration at ASGDC, injunctions related to any of her prior and future outgoing calls from ASGDC, and the ability to bank time from prior periods of incarceration for which charges were subsequently dismissed.

2.     ADA Claim

It appears that Plaintiff may be attempting to assert a claim that Justice Kittredge's and Mr. McKenzie's efforts to raise funds to fence the area behind the SCSC building will hinder her access to the court in violation of the ADA. [ECF No. 16 at 9]. "Title II, §§ 12131–12134, prohibits any public entity from discriminating against 'qualified' persons with disabilities in the provision or operation of public services, programs, or activities." *Tennessee v. Lane*, 541

16

U.S. 509, 517 (2004). "The Act defines the term 'public entity' to include state and local governments, as well as their agencies and instrumentalities." *Id.* (citing § 12131(1)). Plaintiff references Mr. McKenzie "collecting . . . donations" for the project and Justice Kittredge forcing the Clerk to "lie" that a "new 'ADA ramp' is being buil[t] at the front of the building." [ECF No. 16 at 9]. However, she does not allege that access to the ramp at the rear of the building has been obstructed. It appears that Plaintiff is merely speculating that erection of a fence behind the SCSC building will obstruct her access to a ramp and require she climb the stairs.

In the absence of Plaintiff's affirmative statement that she is a "qualified" individual under the ADA and that any defendant has hindered her access to the building through removal of and failure to replace a ramp, she does not appear to have a valid ADA claim that is ripe for disposition. Furthermore, Mr. McKenzie and Justice Kittredge are not appropriate parties to the action based solely on fundraising and other efforts to have the SCSC's rear parking lot fenced. Finally, even if Plaintiff might amend her complaint to state a valid claim for violation of the ADA, it is not appropriate for her to do so in the context of this case, as there is no nexus between her allegations as to violations of § 1983 related to her incarceration at ASGDC and alleged violations of the ADA related to the SCSC's facility. Therefore, Plaintiff's

claims against Justice Kittredge and Mr. McKenzie are subject to summary dismissal.

### 3.    Failure to State a Claim Under § 1983 (General)

Plaintiff explicitly states she has brought this action pursuant to 42 U.S.C. § 1983. [ECF No. 16 at 1]. To state a plausible claim for relief under § 1983, an aggrieved party must sufficiently allege she was injured by "the deprivation of any [of her] rights, privileges, or immunities secured by the [United States] Constitution and laws" by a "person" acting "under color of state law." *See* 42 U.S.C. § 1983; *see generally* 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1230 (3d ed. 2014). To state a claim on which relief may be granted, Plaintiff "must have plausibly alleged in his complaint that his constitutional rights were violated." *Tobey v. Jones*, 706 F.3d 379 (4th Cir. 2013).

To assert a viable § 1983 claim against a public official, a causal connection or affirmative link must exist between the public official and his conduct. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (providing that a plaintiff in a § 1983 action must plead that the defendant, through his own individual actions, violated the Constitution); *Rizzo v. Goode*, 423 U.S. 362, 371–72 (1976) (holding a § 1983 plaintiff must show that he suffered a specific injury as a result of specific conduct of a defendant, and an affirmative link between the injury and that conduct); *Wright v. Collins*, 766 F.2d 841, 850 (4th

18

Cir. 1985) ("In order for an individual to be liable under § 1983, it must be 'affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights. The doctrine of respondeat superior has no application under this section.'") (quoting *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977)).

For the reasons explained below, the undersigned finds Plaintiff has failed to plead sufficient facts to support general causes of action under § 1983 against the following defendants:

a.    Richland County

Plaintiff alleges Richland County devolved the duties of Sheriff Lott on a facility manager for ASGDC pursuant to S.C. Code Ann. § 24-5-12. [ECF No. 16 at 2]. She claims her constitutional rights were violated, leading to her injury while she was incarcerated at ASGDC. *See generally* ECF No. 16. She presumably argues Richland County is a proper defendant based on its custodial role over ASGDC. *Id.* at 2.

The law provides:

> The sheriff shall have custody of the jail in his county and, if he appoints a jailer to keep it, the sheriff shall be liable for such jailer and the sheriff or jailer shall receive and safely keep in prison any person delivered or committed to either of them, according to law.

S.C. Code Ann. § 24-5-10.

However, S.C. Code Ann. § 24-5-12 provides the following alternative arrangement:

> Notwithstanding the provisions of Section 24-5-10 or any other provision of law, the sheriff of any county may, upon approval of the governing body of the county, devolve all of his powers and duties relating to the custody of the county jail and the appointment of a facility manager on the governing body of the county . . . . Once a sheriff has devolved these powers and duties to the governing body, custody of the jail shall remain with the governing body unless, by mutual agreement and approval of the sheriff, the governing body devolves its powers and duties relating to the custody of the county jail to the sheriff.

The Supreme Court has held that "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 694 (1978). "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.*

Plaintiff has pointed to no official policy or custom of Richland County that led to an alleged violation of her rights under the Constitution or federal law. At most, Plaintiff attributes to Richland County, in a conclusory fashion, the alleged wrongful acts of other defendants employed by ASGDC. Richland County's custody over ASGDC and its appointment of its manager do not subject it to liability under § 1983 in the absence of evidence that it had an official policy or custom that led to the alleged violations of Plaintiff's constitutional rights and resulting injury. Therefore, Plaintiff's claims against Richland County are subject to summary dismissal.

b.      Sheriff Lott

Plaintiff identifies Sheriff Lott as a defendant in the case caption and indicates she is suing him "individually for damages and officially for injunctive relief." [ECF No. 16 at 1]. She includes no allegations against Sheriff Lott in the complaint and only indicates Richland County devolved his "duties on a facility manager from ASGDC." *Id.* at 2. It appears that at some point prior to Plaintiff's incarceration, Sheriff Lott devolved his powers and duties relating to the custody of ASGDC and the appointment of a facility manager on Richland County Council in accordance with S.C. Code Ann. § 24-5-12. Sheriff Lott is not liable for alleged constitutional violations and injuries caused by ASGDC employees merely because he would lawfully be the custodian of the facility if he had not devolved his powers and duties to Richland County Council. Plaintiff has failed to state a § 1983 claim against Sheriff Lott, and he should be summarily dismissed from this action.

c.      Chairman Walker

Plaintiff identifies Chairman Walker in the case caption, noting she is suing him "officially as Chair of RC Council for injunctive relief." [ECF No. 16 at 1]. She includes no allegations against Chairman Walker in the complaint. Therefore, the undersigned recommends the court dismiss Chairman Walker as a defendant.

d.    Director Stirling

Plaintiff indicates she is suing Director Stirling "solely for declaratory and injunctive relief." [ECF No. 16 at 1]. She references Governor McMaster's authority to command reports and information from ASGDC and notes that either he or Director Stirling obtained such a report in April 2023. *Id.* She does not allege Director Stirling deprived her of any rights, privileges, or immunities secured by the Constitution or laws, but claims he and Governor McMaster "need to remain defendants herein for implementation of any and all remedial actions this Court deems just and proper." *Id.*

Plaintiff has failed to state a § 1983 claim against Director Stirling. Consequently, the undersigned recommends he be dismissed as a party to the action.

e.    Mr. Griffith

Plaintiff raises several conspiracy theories against Mr. Griffith, her appointed attorney. She generally claims he conspired with others to "prolong and/or renew" her incarceration, "gaslight" her, increase her physical and mental suffering, lure one or both of her sisters to South Carolina to be arrested, otherwise harmed, or to deny her of their love and support, and to lure her to Richland County Court of Common Pleas for PCR hearings in November 2022 for the purpose of having her arrested for coming in contact with court personnel in violation of the SCSC's order. [ECF No. 16 at 8–9]. She

22

more specifically alleges Mr. Griffith offered to drive her to ASGDC on June 27, 2022, because "[p]erhaps there was a secret plan to not issue a bench-warrant for [her] arrest had she not reported" or "conversely, perhaps there was a plan to shoot [her] under pretext that she was a fugitive if she had not reported or was late in reporting and Griffith wanted to be there to be the Judas who delivered Christ for crucifixion." *Id.* at 8. Plaintiff also appears to allege the following of Mr. Griffith's actions violated her rights under the Constitution or federal law: failing to visit her while she was incarcerated at ASGDC; arriving late to pick her up from ASGDC on July 4, 2022; falsely reporting to her sister that he had waited for her outside ASGDC for 45 minutes because she would not walk across the parking lot; only allowing her to stop at her P O box and an ATM after he missed a turn; and refusing to stop at a fast food restaurant to get her water. *Id.* at 8–9.

As an initial matter, the undersigned notes that as a court-appointed attorney, Mr. Griffith is not a state actor under § 1983. *See Polk County v. Dodson*, 454 U.S. 312, 317–18 (1981) (noting a person acts under color of state law "only when exercising power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law" and stating "a lawyer representing a client is not, by virtue of being an officer of the court, a state actor 'under color of state law' within the meaning of § 1983"). Plaintiff's § 1983 claim against Mr. Griffith fails on this ground alone.

23

Under § 1983, an alleged conspiracy must be pled and proved by concrete facts, not mere conclusory allegations. *Simmons v. Poe*, 47 F.3d 1370, 1376–77 (4th Cir. 1995); *Buschi v. Kirven*, 775 F.2d 1240, 1248 (4th Cir. 1985). Under Fed. R. Civ. P. 12(b), the court lacks jurisdiction over claims that are "so attenuated and unsubstantial as to be absolutely devoid of merit." *Hagans v. Lavine*, 415 U.S. 528, 536 (1974). Plaintiff presents only conclusory allegations as to Mr. Griffith's participation in a conspiracy. Therefore, she has not properly pled the existence of a conspiracy under § 1983.

Furthermore, Mr. Griffith's purported actions were not unconstitutional, and he caused her no recognizable injury. In light of the foregoing, the undersigned recommends the court summarily dismiss Mr. Griffith as a party to this action.

f.    Ms. Dixon

Plaintiff generally alleges Ms. Dixon was a party to a conspiracy to "prolong and/or renew" her incarceration, "gaslight" her, increase her physical and mental suffering, lure one or both of her sisters to South Carolina to be arrested, otherwise harmed, or to deny her of their love and support, and to lure her to Richland County Court of Common Pleas for PCR hearings in November 2022 for the purpose of having her arrested for coming in contact with court personnel in violation of the SCSC's order. [ECF No. 16 at 8–9]. She does not allege Ms. Dixon is a state actor who violated her rights under the

24

Constitution or federal law and who caused her injury. Plaintiff references no facts to support the existence of a conspiracy to violate her rights, and her claims are conclusory and devoid of merit. *See Hagans*, 415 U.S. at 536. Therefore, the undersigned recommends summary dismissal of Plaintiff's claims against Ms. Dixon.

        g.     Mr. Grantland, Mr. Tinsley, Mr. Tetterton, Mr. Mason, Ms. Steele, and Chief Holbrook

Plaintiff alleges Mr. Grantland, Mr. Tinsley, Mr. Tetterton, Mr. Mason, and Ms. Steele conspired to vandalize and steal her truck in retaliation for views she expressed on Google and FITSNews regarding the murder trial in *State of South Carolina v. Richard Alexander Murdaugh*, and Chief Holbrook enabled their actions. [ECF No. 16 at 9]. Plaintiff makes only conclusory allegations and references no facts to support the existence of a conspiracy to violate her rights. Therefore, her claims against Mr. Grantland, Mr. Tinsley, Mr. Tetterton, Mr. Mason, Ms. Steele, and Chief Holbrook are devoid of merit and subject to summary dismissal. *See Hagans*, 415 U.S. at 536.

Even if Plaintiff could amend her complaint to assert facts that would support her theory, the undersigned recommends she not be permitted to do so in this case. Any claims regarding a conspiracy to steal and vandalize her truck are unrelated to her claims regarding her detention at ASGDC.

25

h.    Solicitor Gipson

Plaintiff sues Solicitor Gipson for injunctive relief. [ECF No. 16 at 1]. She references "a duty to non-discriminatorily and non-retaliatorily respond to reports of crimes" and states "Gipson has similar duties in RC and Kershaw County ("KC"), SC." *Id.* at 2. Plaintiff does not allege Solicitor Gipson violated her constitutional rights or caused her injury. She has failed to allege sufficient facts to support a § 1983 claim against Solicitor Gipson.

To the extent Plaintiff attempts to allege Solicitor Gipson has failed to respond to her reports of crimes, he is entitled to absolute prosecutorial immunity. *Imbler v. Pachtman*, 424 U.S. 409 (1976) (extending absolute immunity to prosecutors in suits brought pursuant to § 1983 related to the initiation and pursuit of a criminal prosecution).

In light of the foregoing, the undersigned recommends the court dismiss Solicitor Gipson as a defendant.

i.    Officer McClennan

Plaintiff identifies Officer McClennan as having been "sent to relieve [Officer] Trapp," but she fails to plead that Officer McClennan took any actions that allegedly violated her constitutional rights. [ECF No. 16 at 5]. Because Plaintiff has not argued Officer McClennan violated her constitutional rights through his own actions, she cannot sustain a § 1983 claim against him. *See Iqbal*, 556 U.S. at 676; *Rizzo*, 423 U.S. at 371–72; *Wright*, 766 F.2d at 850. To

the extent Plaintiff might allege Officer McClennan engaged in the actions she ascribed to ASGDC Employees, she has failed to allege sufficient facts to support the cause of action for the reasons detailed below. Therefore, the undersigned recommends the court summarily dismiss Officer McClennan as a defendant.

### j.    All Other Unknown-Named Persons

Plaintiff includes as defendants All Other Unknown-Named Persons. [ECF No. 16 at 1]. However, she fails to indicate how these individuals violated her constitutional rights, and requests no specific relief as to them. *See generally* ECF No. 16. As noted above, Plaintiff has stated only conclusory allegations and has failed to plead and show concrete facts that would support the existence of a conspiracy. *See Simmons,* 47 F.3d at 1376–77; *Buschi*, 775 F.2d at 1248. Therefore, All Other Unknown-Named Persons are subject to summary dismissal.

### 4.    § 1983 Claims Based on Alleged Eighth Amendment Violations

The remainder of Plaintiff's allegations generally pertain to conditions of her confinement and attention to her medical needs at ASGDC between June 27 and July 4, 2022. She appears to allege the remaining defendants' actions were calculated to "intentionally upset [her] to prevent her recovery and worsen her condition, thus going beyond deliberate indifference to her medical needs and into active interference with her recovery and intent to cause her

27

deterioration." [ECF No. 16at 6]. She also seems to maintain that some of these defendants did not respond to her requests for medical attention in as timely a manner as she desired and failed to administer three doses of Eliquis. *Id.* at 4, 6, 7. She claims these defendants' actions caused her to have nightmares and unremitting atrial fibrillation.

In *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016), the court explained that the Eighth Amendment's prohibition of the infliction of "cruel and unusual punishment" considers "the treatment a prisoner receives in prison and the conditions under which he is confined." *Id.* (quoting *Helling v. McKinney*, 509 U.S. 25, 31 (1992)). "[T]he Eighth Amendment imposes a duty on prison officials to 'provide humane conditions of confinement . . . [and] ensure that inmates receive adequate food, clothing, shelter, and medical care.'" *Id.* (quoting *Farmer v. Brennen*, 511 U.S. 825, 832, 114 S. Ct. 1970, 128 L.Ed.2d 811 (1994)).

"The Eighth Amendment does not prohibit cruel and unusual prison conditions; it prohibits cruel and unusual punishments. If a prisoner has not suffered serious or significant physical or mental injury as a result of the challenged condition, he simply has not been subjected to cruel and unusual punishment within the meaning of the Amendment." *Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir. 1993).

As stated by the Fourth Circuit, "[t]he Eighth Amendment inquiry proceeds in two parts: whether confinement conditions inflict harm that is, 'objectively, sufficiently serious' to deprive prisoners of 'the minimal civilized measure of life's necessities' and whether officers subjectively acted with 'deliberate indifference to inmate health or safety' because they knew of but disregarded the inhumane treatment. *Thorpe v. Clarke*, 37 F.4th 926, 933 (4th Cir. 2022) (citing *Farmer*, 511 U.S. at 834, 838). To show that the conditions amount to "extreme deprivation[ ]," the prisoner "must allege 'a serious or significant physical or emotional injury resulting from the challenged conditions,' or demonstrate a substantial risk of such serious harm resulting from the prisoner's exposure to the challenged conditions." *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003) (citations omitted).To bring a cause of action under § 1983 based on prison conditions prohibited under the Eighth Amendment concerning denial of or inadequate medical care, a plaintiff also "must satisfy the Supreme Court's two-pronged test set forth in *Farmer*" *Scinto*, 841 F.3d at 225. The court explained:

> First, *Farmer's* "objective prong" requires plaintiffs to demonstrate that the "deprivation alleged [was], objectively, 'sufficiently serious,' the deprivation must be "extreme"—meaning that it poses "a serious or significant physical or emotional injury resulting from the challenged conditions," or "a substantial risk of such serious harm resulting from . . . exposure to the challenged conditions." *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003) (internal quotation marks and citations omitted). In medical needs cases, like the case at bar, the *Farmer* test requires plaintiffs to demonstrate officials' deliberate indifference to a "serious" medical

need that has either "been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreve*, 535 F.3d 224, 241 (4th Cir. 2008).

Second, under *Farmer's* "subjective" prong, plaintiffs must show that prison officials acted with "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834, 114 S. Ct. 1970 (internal quotation marks omitted).

*Id.*

In *Estelle v. Gamble*, 429 U.S. 97, 104 (1976), the Supreme Court stated:

We therefore conclude that deliberate indifference to serious medical needs of a prisoner constitutes the "unnecessary and wanton infliction of pain," *Gregg v. Georgia, supra*, at 173, (joint opinion), proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

"In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* at 106. "It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." *Id.*

As explained below, the undersigned has considered Plaintiff's allegations as to the remaining defendants and finds Plaintiff has failed to allege a claim for violation of her Eighth Amendment rights. Accordingly, the undersigned recommends dismissal of the claims, brought pursuant to § 1983, against all remaining defendants.

a.     Director Moye

Plaintiff alleges Director Moye "failed to adequately train ASGDC in decent treatment of inmates." [ECF No. 16 at 6]. In support of this allegation, Plaintiff references Officer Dier's profane encounters with inmates and knocking over her food tray while pushing an inmate into a cell. *Id.* She further submits Director Moye "neglected repair of cells in P-dorm," noting she was forced to share a cell with another female inmate because one of the dorm's cells had flooded and was unavailable for her use. *Id.*

To the extent Plaintiff alleges Director Moye should have trained ASGDC staff to avoid profanity and physical confrontations in performing their job duties, the Constitution imposes no such duty. The Constitution requires prison officials "provide humane conditions of confinement . . . [and] ensure that inmates receive adequate food, clothing, shelter, and medical care." *Farmer*, 511 U.S. at 832. Plaintiff was not subjected to inhumane conditions of confinement for having witnessed verbal and physical confrontations and having her food tray knocked over. These actions do not meet *Farmer's* first requirement of an objectively "sufficiently serious" deprivation. *Farmer*, 511 U.S. at 834.

Plaintiff's complaints as to a flooded jail cell that resulted in her having to share a cell with another inmate also fails to rise to the level of an Eighth Amendment violation. Although Plaintiff alleges she "feared attack" by her

31

cellmate, who referred to her as "the b----," she sustained no specific, serious injury as a result of having to share a cell. *See Strickler*, 989 F. 2d at 1381.

For the foregoing reasons, the undersigned recommends the court find Plaintiff has failed to allege sufficient facts to support a cause of action for violation of her Eighth Amendment rights under § 1983 against Director Moye.

      b.    ASGDC Employees

Plaintiff points to the following actions on the part of the ASGDC Employees: they "scolded [her] to keep standing" instead of allowing her to sit in a vacant wheelchair after Mr. Griffith dropped her off on June 27, 2022; they ignored her as she pecked on the plexiglass door of the intake cell and pointed to her medical emergency bracelet; they did not give her a pen to fill out a medical request form, locked her in her cell before she could complete the form, and ignored her efforts to turn in the form; they intervened to prevent hospital staff from notifying her sister that she had been hospitalized; they turned on the television, sometimes very loudly, while guarding her at Prisma; they threw away unwanted food instead of giving it to her; they left one handcuff on her wrist and the other dangling when they uncuffed her from the bed to use the restroom; they denied her request for gauze to be wrapped beneath the cuff on her ankle; and they left the P-dorm unattended, resulting in her inability to access "quasi-open-air" area. [ECF No. 16 at 3–6]. She argues that "[w]ith [her]

blood pressure very high and heart rate rapid and irregularly irregular, upsetting her could have led to her death or to a stroke." *Id.* at 6.

Plaintiff appears to argue that all actions the ASGDC Employees took that were contrary to what she wanted them to do caused her health to deteriorate and demonstrated their deliberate indifference to her serious medical needs. The court declines to adopt a standard whereby an inmate may proceed with an Eighth Amendment deliberate indifference claim based on detention center employees having "upset" her, as alleged by Plaintiff. Plaintiff cites no actions on the part of ASGDC Employees indicating deliberate indifference to her safety, her health, or a serious medical condition.

Plaintiff also alleges that upon return to ASGDC after being released from Prisma, and following her "new atrial fibrillation diagnosis," ASGDC Employees failed to monitor her blood pressure as prescribed; failed to follow up on a promise of a EKG assessment, and only administered three of six prescribed doses of Eliquis. [ECF No. 16 at 6–7].

Assuming arguendo that ASGDC Employees failed to administer three of six indicated doses of Eliquis between Plaintiff's return from Prisma on July 1 and her release on the morning of July 4, this was not "sufficiently harmful to evidence deliberate indifference to a serious medical need." *Estelle*, 429 U.S. at 106. Plaintiff has not alleged the missed doses or any other action taken or

33

not taken by ASGDC Employees upon her return to ASGDC caused her to suffer a stroke[3] or any other complication of atrial fibrillation.

To the extent Plaintiff generally challenges the medical care she received in ASGDC, the undersigned finds she has alleged insufficient facts to support a claim for deliberate indifference to her serious medical needs. "Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice." *Thomas v. Anderson City Jail*, C/A No. 6:10-3270, 2011 WL 534392, at *1 (D.S.C. Feb. 8, 2011) (*quoting Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir. 1988); *see also Brown v. Thompson*, 868 F. Supp. 326 (S.D. Ga. 1994) ("Providing medical care is not discretionary . . . . The type and amount of care, however, is purely discretionary."); *Wright v. Moore*, C/A No. 8:12-1456, 2013 WL 4522903, at *6 (D.S.C. Aug. 26, 2013) (stating a prisoner's belief he had a more serious injury or that he required better treatment does not establish a constitutional violation).

Plaintiff was in the custody of ASGDC for fewer than nine days, with approximately three of those days spent under guard at Prisma.[4] She admits

---

[3] "A[trial] fib[rillation] increases a person's risk for stroke." Centers for Disease Control and Prevention, Atrial Fibrillation, https://www.cdc.gov/heartdisease/atrial_fibrillation.htm (last visited Aug. 7, 2023). A court may take judicial notice of factual information in postings on government websites. *See Phillips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

[4] Plaintiff was booked into ASGDC at 10:00 a.m. on June 27, transported to Prisma on the night of June 28, released from Prisma to return to ASGDC on

she received the following access to medical care at ASGDC: her weight, temperature, and blood pressure were monitored upon intake on June 27, 2022; her blood pressure was rechecked by a nurse who was distributing nighttime medications on June 27, 2022; she was taken to the medical unit, an EKG was administered, and she was prescribed nitroglycerin on June 27, 2022; her blood pressure was monitored by a nurse on the evening of June 28, 2022, and she was transported to Prisma for atrial fibrillation; she was hospitalized at Prisma until July 1, 2022; she was administered Eliquis by a nurse presumably on the mornings of July 2 and 3 and the evening of July 2; and she spoke to Nurse Halsey about bradycardia on July 3. [ECF No. 16 at 3–7].[5]

_____

June 1, and released at 4:00 a.m. on July 4, although she was held for some time thereafter pending Mr. Griffith's arrival.

[5] Although "delayed medical treatment can constitute a manifestation of deliberate indifference," *Smith v. Smith*, 589 F.3d 736, 739 (4th Cir. 2009), here, Plaintiff has failed to allege facts sufficient to support such a claim. *See, e.g., id.* ("Smith similarly stated a claim for deprivation of needed medical care. His complaint stated that he was prescribed medicine by Dr. Patel, and that the OTR enabling him to receive the ordered treatment was destroyed by Nurse Smith, ultimately depriving him of care. In pleading that Nurse Smith destroyed the means for him to access the medical treatment ordered by the doctor, Smith alleged facts sufficient to constitute intentional denial of treatment because mere delay or interference can be sufficient to constitute a violation of the Eighth Amendment."); *Baker v. Smith*, C/A No. 6:22-02073-JD-KFM, 2023 WL 3096470, at *3 (D.S.C. Apr. 26, 2023) ("Here, Plaintiff alleges he was injured after falling off his bunk on September 30, 2021, and did not receive the x-ray, steroid shot, and exercise sheet, which the Report cites to as evidence of some treatment, until June 2022, nine months later. Additionally, Plaintiff alleges, after the fall, '[e]veryday [he] would ask for medical.' Therefore, Plaintiff at least alleges a cognizable claim for deliberate indifference by alleging a nine-month gap between injury and treatment, and summary dismissal of that claim is inappropriate at this stage.") (citations

Accordingly, the undersigned recommends the court find Plaintiff has failed to allege sufficient facts to support a cause of action for violation of her Eighth Amendment rights under § 1983 against ASGDC Employees.

c.    Officer Goldwire

Plaintiff claims Officer Goldwire read her emergency bracelet and "knew, or could have known" she "suffer[ed] *inter alia* from iatrogenic hypoparathyroidism that cause[d] hypocalcemia which, if exacerbated and untreated, could cause fatal laryngeal-stridor-inducing tetany." [ECF No. 16 at 3]. She states that after her blood pressure was determined to be elevated at 154/104 mmHg,[6] Officer Goldwire pushed her into a holding cell, where she was locked in for hours and experienced severe pain due to sitting on the hard surface, although Plaintiff does not allege Officer Goldwire was aware of her elevated blood pressure. *Id.* She indicates that after some time in the holding

_____

omitted)).

[6] The American Heart Association advises of two types of hypertensive crises—hypertensive urgency and hypertensive emergency—both requiring immediate attention. American Heart Association, Hypertensive Crisis: When You Should Call 911 for High Blood Pressure (Last Reviewed: May 31, 2023), https://www.heart.org/en/health-topics/high-blood-pressure/understanding-blood-pressure-readings/hypertensive-crisis-when-you-should-call-911-for-high-blood-pressure. Hypertensive emergency involves blood pressure of 180/120 mmHg or greater accompanied by symptoms of target organ damage, including chest pain, shortness of breath, back pain, numbness/weakness, change in vision, or difficulty speaking. *Id.* Hypertensive urgency involves blood pressure greater than 180/120 mmHg without symptoms of target organ damage. *Id.* Hypertensive emergency requires hospitalization. *Id.* Hypertensive urgency may require a medication adjustment, but rarely requires hospitalization. *Id.*

cell and multiple attempts to get the attention of ASGDC Employees, she finally spoke with Officer Goldwire again, who told her that she "must suffer" because she was in jail and dismissed her allegation that her intake assessment had not been completed by stating someone else would be completing the next stage of the assessment. *Id.*

Plaintiff's claims against Officer Goldwire can reasonably be condensed into arguments that he should have made her more comfortable and arranged for more timely completion of her medical evaluation. "[N]ot every inconvenience encountered [in a detention center setting] amounts to 'punishment' in the constitutional sense." *Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir. 1988) (citing *Bell v. Wolfish*, 441 U.S. 520, 537 (1979)).[7]

Officer Goldwire's alleged actions did not result in an objectively sufficiently serious violation of Plaintiff's Eighth Amendment rights. Therefore, the undersigned recommends the court summarily dismiss Plaintiff's cause of action for violation of her Eighth Amendment rights under § 1983 against Officer Goldwire.

---

[7] Throughout her complaint, Plaintiff alleges that multiple defendants taunted, teased, or threatened her. However, verbal harassment, abuse and threats, without more, are not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983. *See, e.g., Henslee v. Lewis*, 153 Fed. Appx. 178, 180 (4th Cir.2005) ("Mere threats or verbal abuse by prison officials, without more, do not state a cognizable claim under § 1983").

d.     Officer McKinley/Kinney

Plaintiff alleges Officer McKinley/Kinney initially forced her to walk toward the area for transport, but subsequently returned to her cell to retrieve the wheelchair and used it to transport her the remainder of the way to the medical transport area. [ECF No. 16 at 4]. She claims that after she arrived at Prisma, Officer McKinley/Kinney refused her request to turn off the lights in the room and to complete his hourly reports by flashlight, instructed hospital staff not to comply with her requests for a warm blanket, and intervened to stop hospital staff from notifying her sister that she had been hospitalized by stating it was "against the law" to do so. *Id.* at 4–5. She asserts this irritated her and caused her blood pressure and heart rate to increase. *Id.* at 4.

None of the actions Plaintiff references resulted in deprivations of her rights that were objectively sufficiently serious to support allegations of an Eighth Amendment violation. Accordingly, the undersigned recommends the court dismiss Officer McKinley/Kinney as a defendant.

e.     Officer Trapp

Plaintiff alleges Officer Trapp inserted herself into conversations with healthcare providers, instructed the cleaning staff not to empty the trash or laundry bins in her room, turned the television to a loud cartoon channel, taunted her when she asked her to turn off the television, stated the nursing staff did not care about her, indicated she was compiling reports of Plaintiff's

bad behavior, and erroneously claimed Plaintiff was incarcerated "because she would not stop calling 911." [ECF No. 16 at 5]. She further indicates Officer Trapp refused to allow her to check her belongings inside ASGDC after Mr. Griffith arrived to pick her up. *Id.* at 8.

The actions Plaintiff references were mere inconveniences to her and fail to demonstrate the objectively sufficiently serious deprivations required to support a claim for deliberate indifference to a serious medical need under the Eighth Amendment. Therefore, the undersigned recommends dismissal of Plaintiff's § 1983 claim against Officer Trapp.

f.    Officer Pinckney

Plaintiff claims that while guarding her at Prisma, Officer Pinckney told her to shut up and stated she could "cuss [her] anytime [she] wanted." [ECF No. 18 at 6]. These actions were not objectively sufficiently harmful to evidence deliberate indifference to Plaintiff's serious medical need. Accordingly, the undersigned recommends the court find Plaintiff has failed to state a claim under § 1983 against Officer Pinckney.

g.    Officer Dier

Plaintiff alleges she observed Officer Dier exchange profanity with an inmate over the dorm's loudspeaker and end up in a verbal and physical altercation with an inmate during which Officer Dier pushed the inmate into her cell door, causing her food tray to spill. [ECF No. 16 at 6]. As discussed

39

above, Plaintiff's observation of physical and verbal altercations and the spilling of her food tray do not equate to Eighth Amendment violations. Therefore, the undersigned recommends the court find Plaintiff has failed to state a claim against Officer Dier.

Because none of the remaining defendants' actions meet the first requirement in *Farmer*, Plaintiff has failed to state an Eighth Amendment claim or any other claim under § 1983.

### 5.    Supplemental Jurisdiction Over State Law Claims

Although the court retains supplemental jurisdiction over state law claims that form part of the same case or controversy as the federal claims, 28 U.S.C.A. § 1367(a) (West), "[a]s a practical matter . . . many district judges will exercise their discretion under the supplemental jurisdiction statute and dismiss the remaining claims." 16 Moore's Federal Practice § 107.14(3)(b)(ii) (3rd ed. 2013); *see also* 28 U.S.C. § 1367(c). Pursuant to 28 U.S.C. § 1367(c)(3), the district court may decline to exercise supplemental jurisdiction "if the district court has dismissed all claims over which it has original jurisdiction." *See also United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."); *United States ex rel. Scott v. Metropolitan Health Corp.*, 375 F.Supp.2d 626, 647 (W.D. Mich. 2005) ("[T]he strong federal custom ... has been to dismiss those claims

40

in order to permit state courts to decide their own law, as is their prerogative."); *see also AJP Group, Inc. v. Holmes*, C/A No. 4:13-611-RBH, 2013 WL 3148416, at *2 (D.S.C. June 18, 2013) ("Given that Plaintiff's Complaint states no federal cause of action, the Court finds that the case should be remanded."); *Morris v. Joe Gibson Automotive, Inc.*, C/A No. 7:08-1739-HMH, 2008 WL 2705000 (D.S.C. July 9, 2008) (granting the plaintiff's motion to amend to remove the sole federal claim, and granting the plaintiff's motion to remand).

In light of the recommendation that the court dismiss all claims over which it has original jurisdiction, the undersigned further recommends the court decline to exercise jurisdiction over Plaintiff's state law claims and dismiss them pursuant to 28 U.S.C. § 1367(c)(3).

### 6.    Motion for Recusal

Plaintiff referenced in her amended complaint and filed a separate motion seeking recusal of the undersigned and Judge Wooten and reassignment of the case to the Honorable Richard M. Gergel, United States District Judge ("Judge Gergel"), the Honorable Cameron McGowan Currie, Senior United States District Judge ("Judge Currie"), or the Honorable Joseph F. Anderson, Jr., Senior United States District Judge ("Judge Anderson"). [ECF Nos. 16, 17].

Plaintiff previously moved for recusal of the undersigned and Judge Wooten, which was denied by order dated July 14, 2023, based on her failure

to present evidence supporting her request for recusal. [ECF No. 11]. She now renews the request and claims "Judge Hodges' husband represents R[ichland] C[ounty]; and Jurist Wooten had reason to recuse himself from another case involving Lott and RC." [ECF No. 17 at 1].

Recusal of federal judges is generally governed by 28 U.S.C. § 455, which provides: "Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."

The undersigned is contemporaneously issuing a separate order denying Plaintiff's request that she recuse herself in this matter. However, because 28 U.S.C. § 455 reserves the issue of disqualification to each judge individually, the undersigned declines to address the issue of Judge Wooten's recusal. Because reassignment would only be required if Judge Wooten were to recuse himself in this matter, the undersigned defers to Judge Wooten on this issue.

III.    Conclusion and Recommendation

For the reasons explained above, the undersigned recommends the district judge dismiss all defendants and all federal claims with prejudice given Plaintiff's defiance of the court's order and notice and her attempts to bring claims in this action that were previously dismissed with prejudice in a prior case. The undersigned further recommends the court dismiss Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(c)(3). The undersigned declines to

address Plaintiff's motion that Judge Wooten recuse himself in this matter.

IT IS SO RECOMMENDED.

August 9, 2023                                    Shiva V. Hodges
Columbia, South Carolina                         United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).